UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

GREGORY BENTON,

    Plaintiff,

  v.

LEGACY HEALTH and CHRISTOPHER MCDONALD,

    Defendants.

Case No. 3:13-CV-00613-YY

FINDINGS AND RECOMMENDATIONS

YOU, Magistrate Judge:

**INTRODUCTION**

Plaintiff, Gregory Benton ("Benton"), filed this action *pro se* on April 9, 2013, alleging physical injuries and constitutional violations as a result of an encounter in which he was removed from the premises of Legacy Emanuel Medical Center in Portland, Oregon, in early August 2012. Following dismissal of his initial complaint on May 14, 2013 (ECF #8, adopting F&R, ECF #4), and dismissal of certain claims in his amended pleading on May 7, 2014 (ECF #37, adopting F&R, ECF #34), Benton filed a Second Amended Complaint on May 12, 2014 (ECF #39). Several scheduling conferences and extensions of the case schedule ensued, with Benton requesting appointment of *pro bono* counsel in late April 2015 (ECF #57). This court granted that request on April 23, 2015 and, within a couple of weeks, Benton obtained such

1 – FINDINGS AND RECOMMENDATIONS

representation (ECF #60). Following Benton's arrest on unrelated charges, this court stayed this case from December 9, 2015, until March 7, 2016 (ECF ## 69, 72). Benton's attorney withdrew due to a job change and, in late June 2016, Benton obtained the services of his current attorneys (ECF #79). Discovery disputes and an unopposed request to amend the pleadings ensued (ECF #100, 103, 105).

On May 16, 2017, Benton filed a Third Amended Complaint ("TAC") (ECF #106), in which he withdrew his claim under the Americans With Disabilities Act ("ADA"), named the correct entity defendant, and realleged his claims against Legacy Health ("Legacy") and a police officer of the Portland Police Bureau ("PPB"), Christopher McDonald ("McDonald"). Benton's two claims include claims for (1) Battery (ORS 30.2765) against Legacy based on the conduct of Legacy employees; and (2) Excessive Force (42 USC § 1983) against McDonald.

On May 16, 2017, Legacy filed its Answer, Affirmative Defenses, and Counterclaims (ECF #108),[1] for the first time alleging counterclaims against Benton for: (1) abuse of process; (2) wrongful initiation of civil proceedings; and (3) fraud. Legacy seeks damages of at least $175,000 against Benton, in the form of repayment of the legal fees and costs it has expended defending against Benton's lawsuit.

Benton has now filed a Motion to Strike, or Alternatively, to Dismiss Legacy Health's Counterclaims (ECF #111).[2] For the reasons that follow, the motion should be granted and all of Legacy's counterclaims should be dismissed.

---

[1] Two responsive pleadings appear on the court's filing system, one filed by "Legacy Health System, CPC, LLC" (ECF #107) and one filed by "Legacy Health" (ECF #108). The latter-filed pleading is the operative pleading considered by this court.
[2] A motion to strike is not one of the matters specifically excluded in 28 U.S.C. § 636(b)(1)(A), which governs the jurisdiction of magistrate judges. However, the list is not exhaustive, and because this motion would be dispositive of claims, Findings and Recommendations are

2 – FINDINGS AND RECOMMENDATIONS

**FINDINGS**

**I. Request to Strike on Procedural Grounds**

Benton argues that Legacy's counterclaims should be stricken on procedural grounds because they drastically expand the issues in this case and were filed without leave of court in response to an amended pleading that actually narrowed his claims. *See Childress v. Liberty Mut. Fire Ins. Co.*, No. C10-059RSL, 2011 WL 2071200 (W.D. Wash. May 25, 2011). Pointing out Benton's less-than-stellar criminal record and asserting that Benton planned the August 2012 encounter to set himself up to file this lawsuit, Legacy characterizes its counterclaims as part and parcel of its right to defend itself from Benton's claims. Legacy also contends that it never learned about the underlying information supporting its counterclaims until recently, and filed its counterclaims soon thereafter. The character attacks against Benton and Legacy's claim of recent discovery sidestep the issue. The issue is whether Legacy should have filed a motion to amend its answer and assert new counterclaims when it filed its most recent pleading and whether its counterclaims should be stricken for failing to do so.

This court is persuaded that the "moderate approach" best synthesizes the relevant federal rules and their amendments. *See Virginia Innovation Sciences, Inc. v. Samsung Electronics Co., Ltd.*, 11 F. Supp. 3d 622 (E.D. Va. 2014); *see also Childress*, 2011 WL 2071200 at * 1 (citing cases). Under that approach, "'an amended response may be filed without leave only when the amended complaint changes the theory or scope of the case, and then, the breadth of the changes in the amended response must reflect the breadth of the changes in the amended complaint.'" *Va. Innovation Sciences*, 11 F. Supp. 3d at 632 (quoting *Elite Entm't, Inc. v. Khela Bros. Entm't*, 227 F.R.D. 444, 446 (E.D. Va. 2005); remaining citations omitted).

---

required. *United States v. Rivera-Guerrero*, 377 F.3d 1064, 1067 (9th Cir. 2004); *Mitchell v. Valenzuela*, 791 F.3d 1166, 1168-69 (9th Cir. 2015).

Benton's TAC corrected the name of the corporate defendant and significantly narrowed the scope of the case by eliminating his claim under the ADA.  *See* ECF #104, pp. 1-2.  In response, Legacy asserted its counterclaims, each of which calls into question Benton's good faith at instituting this case in the first instance.  The essence of those claims is that Benton planned and orchestrated the encounter with Legacy employees that forms the basis of this lawsuit.  This court does not view the counterclaims as so changing the nature of this case as to merit striking them on procedural grounds.  The same evidence that Legacy will introduce to defend itself against liability from Benton's claims supports its proposed counterclaims, with the exception of evidence regarding amounts expended by Legacy on legal fees and costs.

Moreover, this court is not persuaded that there has been bad faith, undue delay, or prejudice to Benton such as would justify denying a motion to amend under FRCP 15 had Legacy filed such a motion.  Given the rocky and lengthy history of this case, and the late-breaking discovery of certain documentary evidence bearing on these counterclaims, this court does not view the delay as justification enough to merit striking the counterclaims.  Thus, this court recommends denial of Benton's motion to strike Legacy's counterclaims on procedural grounds.  However, as discussed below, this court also recommends that Benton's alternative motion to dismiss be granted, because Legacy's counterclaims appear to suffer from fatal substantive flaws.

## II.  Alternative Motion to Dismiss Counterclaims

In addition to asserting procedural error, Benton contends that Legacy's counterclaims fail on their merits and should be dismissed.  This court agrees, and therefore recommends dismissal of each of Legacy's three counterclaims.

///

### A. Abuse of Process

Benton argues that Legacy's First Counterclaim for abuse of process fails because Legacy has alleged no arrest or seizure of property. Despite an apparent split of authority on that requirement in this district,[3] Oregon courts require such an allegation. *Lee v. Mitchell*, 152 Or. App. 159, 179, 953 P.2d 414, 427 (1998) ("it is necessary to allege either an actual arrest or a seizure of property in order to state [a claim for abuse of process]") (upholding *Reynolds v. Givens*, 72 Or. App. 248, 695 P.2d946 (1985)). While Legacy characterizes its payment of attorney fees as a "seizure," this court has dismissed an abuse of process claim where the plaintiff did not "plead any injuries beyond having to defend the actions." *Acro-Tech, Inc. v. Robert Jackson Family Tr.*, 2001 WL 1471753 at *8 (D. Or. 2001). That is the case here and should obtain the same result. The First Counterclaim for abuse of process should be dismissed.

### B. Wrongful Initiation of Civil Proceedings

Legacy's Second Counterclaim for wrongful initiation of civil proceedings fares no better. No lengthy discussion is required: this case is not over, so Legacy's claim for wrongful initiation of civil proceedings is not yet ripe. *See Alvarez v. Retail Credit Ass'n of Portland, Or., Inc.*, 234 Or. 255, 259-60, 381 P.2d 499, 501 (1963) (*en banc*) (party alleging claim for wrongful initiation of civil proceedings must allege termination of prior proceeding in his or her favor).

Legacy argues that any dismissal of its counterclaim would be premature because Legacy may prevail on a motion for summary judgment or may win on a directed verdict. However, that argument merely highlights the fact that this case is still ongoing and has not been terminated in Legacy's favor. Accordingly, the Second Counterclaim for wrongful initiation of civil proceedings should be dismissed.

---

[3] *See Voltage Pictures, LLC v. Blake*, 2015 WL 9272880 at *4 (D. Or. 2015).

**C. Fraud**

Legacy's Third Counterclaim is for fraud, which requires allegations and proof of: (1) a representation; (2) its falsity; (3) its materiality; (4) Benton's knowledge of its falsity or ignorance of its truth; (5) Benton's intent that the representation should be acted on by Legacy and in the manner reasonably contemplated; (6) Legacy's ignorance of its falsity; (7) Legacy's reliance on its truth; (8) Legacy's right to rely thereon; and (9) Legacy's consequent and proximate injury. *Webb v. Clark*, 274 Or. 387, 391, 546 P.2d 1078, 1080 (1976) (citations omitted). Each of these elements must be "established by clear and convincing evidence." *Id* (citation omitted); *see also Wieber v. FedEx Ground Package Sys., Inc.*, 231 Or. 469, 481, 220 P.3d 68, 77 (2009) (citation omitted).

Legacy alleges that on the day of the incident in August 2012, Benton said to its employees that he "could not walk" (*id.*, ¶ 48), and to McDonald that he "had hit his head and needed medical attention" (*id.*, ¶ 50).[4] Next, Legacy alleges that "Benton represented to Legacy and the court that he had suffered injuries at the hand of Legacy's security officers on August 5, 2012, and demanded payment of more than two million dollars to withdraw [his] claim" but that he "knew that he had not suffered any injuries from Legacy security officers." Answer to TAC, ¶¶ 69-70. Finally, Legacy alleges that it "took Benton's allegations at face value," diligently investigated, undertook defense of this lawsuit, and "did not file a motion to dismiss or use other litigation strategies to try to dismiss the lawsuit at an early stage because it assumed that Benton's allegations were made in good faith," and further that Legacy "had a right to assume

---

[4] Legacy also alleges a series of statements by Benton during encounters predating the August 2012 encounter, but does not appear to rely on those statements as the relevant false representation for purposes of its fraud claim. Answer to TAC, ¶¶ 44-47.

6 – FINDINGS AND RECOMMENDATIONS

Benton made the allegations of an injury in good faith, and relied on the representations." *Id*., ¶¶ 72, 74.

Relying primarily on *Mantia v. Hanson*, 190 Or. App. 412, 417, 79 P.3d 404, 407 (2003), Benton argues that the fraud claim is barred by the litigation privilege, claiming that his day-of-incident statements to Legacy employees that he was injured[5] were incident to a judicial proceeding (*i.e.* this case). This court is not persuaded that the litigation privilege goes so far as to extend Benton an absolute—or even qualified—privilege regarding statements made on the day of the alleged tort that underlies this lawsuit, filed over eight months later. By that logic, *every* communication of any kind would be "preliminary to a proposed judicial proceeding." Neither *Mantia*, nor any other case of which this court is aware, extends the litigation privilege back to capture any statement by the plaintiff within the statute of limitations of the claims eventually asserted.

Moreover, as succinctly stated a decade ago by the California Supreme Court, "[a] prelitigation communication is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration." *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal.4th 1232, 1251, 163 P.3d 89, 102 (2007). The thrust of Legacy's fraud claim is that Benton's statements during the August 2012 encounter at Legacy Emanuel were not made in good faith, but were instead in furtherance of a year-long scheme to set Legacy up to be sued. According to Legacy, Benton's actions in the months preceding—and his statements during—the encounter at Legacy Emanuel were in furtherance of that scheme. Even *Mantia* recognizes that

---

[5] Legacy does not actually allege any statement by Benton to its employees other than he "could not walk." Answer to TAC, ¶ 48. Legacy also alleges that Benton told McDonald that he had "hit his head and needed medical attention." *Id*., ¶ 50. However, all allegations must be taken as true and construed in the non-movant's favor when considering a motion to dismiss. Thus, this court construes Legacy's allegations broadly as an assertion that Benton "represented" to Legacy employees that he had been "injured" during the August 2012 encounter.

7 – FINDINGS AND RECOMMENDATIONS

the absolute privilege does not immunize parties from wrongful initiation of civil proceedings claims. Thus, to the degree Benton's statements were not related to litigation contemplated in good faith, it does not immunize those statements.

Although the fraud claim is not subject to dismissal as barred by the litigation privilege, it nevertheless fails. The only damages presently alleged in the counterclaim for fraud are for attorney fees and expenses incurred in defending Benton's claims. In response to questioning at oral argument, the parties submitted supplemental briefing on the issue of whether such fees and expenses—when comprising the sole damages—are recoverable in such a counterclaim. The cases cited reveal that Oregon courts allow a limited exception to the so-called "American Rule" when "attorney fees are claimed as consequential damages 'on the theory that the defendant's tortious or wrongful conduct involved the plaintiff in litigation with a third party.'" *Hunters Ridge Condominium Assn'n v. Sherwood Crossing, LLC*, 285 Or. App. 416, 437-38, 395 P.3d 892, 905 (2017) (quoting *Montara Owners Ass'n v. La Noue Development, LLC*, 357 Or. 333, 361, 353 P.3d 563, 579 (2015)). This case does not involve such third-party litigation, so that limited exception does not apply, and none of the remaining cases cited by Legacy suggest additional exceptions.

Legacy seeks leave to amend its fraud claim to allege other damages such as damages to its reputation, costs paid to various employees for time spent cooperating with investigations, and the like. However, even if Legacy were allowed to plead additional types of damages, a prior decision of this court nevertheless forecloses his fraud claim. In *Dickerson v. Cable Comm'cns, Inc.*, 2012 WL 1802024 (D. Or. 2012), this court dismissed a counterclaim for fraud filed against putative class plaintiffs asserting wage and hour claims. Judge Papak assumed, "without deciding that incurring attorney fees in defending against plaintiffs' wage claims could

otherwise constitute an 'injury' for purposes of a fraud claim," but nevertheless decided that "the proximate cause of [the employer's] fees incurred in defending" the action was "not plaintiffs' alleged fraud, but rather the filing of plaintiffs' complaint." *Id*. at *3 (footnote omitted). This is the same problem with Legacy's fraud counterclaim. Legacy incurred its investigation and litigation expenses in response to Benton's lawsuit, not in response to his day-of-incident statements to Legacy employees and McDonald that he had been injured by Legacy employees. Legacy attempts to draw a distinction between Benton's statements in August 2012 about "hitting his head and needing medical attention" and the filing of this case, arguing that its fraud counterclaim is based on Benton's representation prior to initiating this lawsuit. However, missing from Legacy's claim is any allegation that it took any action at all between the time of Benton's August 2012 statements and the filing of this lawsuit; instead, all of Legacy's allegations relate to actions taken in response to this litigation.

Finally, a claim for fraud requires reliance on the truth of the false representation. Legacy's allegations directly conflict with that element. Rather than pleading that it took some action *in reliance on the truth of Benton's claim of injury*, "Legacy undertook defense of the lawsuit *in order to discover the truth of Benton's allegations*." Answer to TAC, ¶ 72 (emphasis added). Given Legacy's own allegations, it is simply not plausible—much less provable by clear and convincing evidence—that Legacy relied on the truth of Benton's representation that he was injured from the moment he made it. Instead, as in *Dickerson*, Legacy defended itself from a lawsuit. While Legacy may well have a claim for wrongful initiation of civil proceedings it can bring at the conclusion of this case, its allegations here fall short and no reworking of the pleadings will cure the problems identified by Benton.

## RECOMMENDATIONS

For the reasons stated above, Benton's Motion to Strike (part of ECF #111) should be DENIED and Benton's Alternative Motion to Dismiss (part of ECF #111) should be GRANTED. Legacy Health's counterclaims should be dismissed.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Friday, August 25, 2017. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

## NOTICE

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED August 11, 2017.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge